UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:18-cv-23643-RUIZ/SELTZER

CHARLOTTE SALINERO and
EFREN SALINERO, her husband,

     Plaintiffs,

v.

JOHNSON & JOHNSON, INC. and
ETHICON, INC.,

     Defendants.
_____/

## JOINT PRETRIAL STIPULATION

In accordance with the Court's Scheduling Order [D.E. 31] as amended by the Order Providing Instructions for Jury Trial entered May 15, 2019 [D.E. 127] and Local Rule 16.1(e), Plaintiffs, Charlotte and Efren Salinero ("Plaintiffs") and Defendants, Johnson & Johnson, Inc. and Ethicon, Inc. ("Defendants") (collectively, "Parties"), hereby submit this Joint Pretrial Stipulation.

**(1)    A short concise statement of the case by each party in the action.**

    a.  <u>Plaintiffs' Concise Statement of the Case</u>

Plaintiffs bring this civil action for personal injuries, mental and physical pain and suffering and permanent injury, and loss of consortium[1] arising from complications experienced after Plaintiff Charlotte Salinero's surgical implantation of Defendants' defective Artisyn Y-Shaped Mesh Product ("Artisyn" or "Artisyn Mesh"). The Artisyn Mesh that Plaintiff Charlotte Salinero was implanted with is constructed of polypropylene. Plaintiff Charlotte Salinero was implanted

---

[1] Plaintiff Efren Salinero is the spouse of Plaintiff Charlotte Salinero.

with an Artisyn Mesh by Dr. Jamie Sepulveda on December 3, 2012 to correct a vaginal prolapse. Following her implant surgery, beginning in approximately 2015, Plaintiff Charlotte Salinero began suffering from bleeding, pain, vaginal discharge, nausea, vomiting, bowel obstructions, mesh fibers exposed in the bladder, and a rectovaginal fistula. On April 24, 2017, Plaintiff Charlotte Salinero underwent mesh explant surgery performed by Drs. Jamie Sepulveda, John Mekras, and Marcos Szomstein. Following her explant surgery, she underwent an ileostomy closure with small bowel resection performed by Dr. Szomstein on July 11, 2017 and has continued to suffer from mesh related symptoms including, but not limited to, bowel obstructions, persistent pain, inability to engage in sexual intercourse.

Defendants intend to elicit evidence and testimony regarding the Food and Drug Administration's (FDA) regulatory scheme and that the Artisyn Mesh product complied with FDA regulations. Some of this evidence concerns what is referred to as the FDA 510(k) clearance process. Artisyn was placed on the market pursuant to the FDA's 510(k) clearance process. However, the FDA's 510(k) process has nothing to do with a product's safety and is therefore completely irrelevant to the claims and defenses in this case. Under the 510(k) clearance process, the FDA considers only whether the device is indeed the equivalent of a similar preexisting device—regardless of how unsafe or ineffective the grandfather device happens to be. *Goodlin v. Medtronic, Inc.*, 167 F.3d 1367, 1369 n.1 (11th Cir. 1999). Under this provision the FDA does not require any testing of the proposed device. Defendants also intend to offer other evidence that touch on different, but equally irrelevant aspects of FDA regulations. Evidence and testimony relating to the FDA is inadmissible because: (1) the FDA's 510(k) process is not relevant; and (2) the prejudicial value of evidence regarding the 510(k) process far outweighs its probative value. In other pelvic mesh cases, the Eleventh and Fourth Circuits have upheld the exclusion of such

evidence on grounds that FDA evidence is irrelevant under Rule 402 and unduly prejudicial under Rule 403, holding that discussions related to the regulatory process create a mini-trial on an irrelevant issues, taking away from the true legal questions in the case, which will only confuse the jury, waste time, and create unfair prejudice. *See Eghnayem v. Boston Scientific Corporation*, 873 F.3d 1304, 1317-19 (11th Cir. 2017); *Huskey v. Ethicon, Inc.*, 848 F.3d 151 (4th Cir. 2017); *In re C.R. Bard, Inc.*, *MDL No. 2187, Pelvic Repair System Products Liability Litigation*, 810 F.3d 913 (4th Cir. 2016).

As a result of the negligent conduct of the Defendants and the defective Artisyn Mesh, Plaintiff Charlotte Salinero has suffered and continues to suffer permanent complications, including being unable to have sexual intercourse, and continues to have substantial pain attributable to the Artisyn Mesh.  Plaintiff Charlotte Salinero also suffers from mental anguish from her fear of having to cope with future complications and having future surgeries related to mesh complications.  Plaintiffs bring the present action with theories of negligence, strict products liability (failure to warn and design defect), along with a claim that the Defendants' conduct entitles them to an award of punitive damages.

b. <u>Defendants' Concise Statement of the Case</u>

This is a products liability case involving a prescription medical device known as Artisyn® Y-Shaped Mesh (Artisyn) that was designed and manufactured by Ethicon.  Johnson & Johnson ("J&J") is a holding company that was not involved in the development, manufacture, or sale of the device.  Artisyn is a bridging material used when abdominal sacrocolpopexy surgery is necessary. Abdominal sacrocolpopexy is a procedure used to repair pelvic prolapse, a potentially debilitating condition where one or more of a woman's pelvic organs (bladder, rectum, and uterus)

prolapse into her vagina.   Artisyn is implanted through the abdomen.  It is not a transvaginal mesh product.

Artisyn is regulated by the U.S. Food & Drug Administration (FDA).  The FDA places medical devices in classes according to the risk they present and regulates them accordingly.  Class II medical devices are defined in 21 U.S.C. §360c(a)(1)(C) as those that do not present a "potential unreasonable risk of illness or injury." Artisyn was "cleared" by the FDA using a 510(k) notice process - which requires a demonstration that a new device is as safe and effective as an existing Class II device.  On the other hand, Class III medical devices (those which may present a potential unreasonable risk) cannot be sold unless they are "approved" by the FDA - based on independent evidence of safety and effectiveness. In this case, Artisyn was cleared by the FDA, which concluded that Artisyn is a Class II medical device because there is "reasonable assurance" of its safety and efficacy and it does not present a "potential unreasonable risk of illness or injury."

Artisyn is not defective, did not create an unreasonably dangerous condition, and did not proximately cause the damages that Plaintiffs seek in this case.  Plaintiffs have no competent proof to support their defective manufacture claim; they lack the requisite competent expert proof to support their design defect claim; they cannot prevail on their failure to warn claim under the learned intermediary doctrine, in light of the testimony of the implanting surgeon; and their negligent infliction of emotional distress claim fails as a matter of law.  Further, Plaintiffs are not entitled to punitive damages.

Charlotte Salinero has a lifelong history of chronic constipation, and sometimes went 1-2 weeks without a bowel movement.  This pre-existing condition is relevant to the cause of her current bowel problems that she attributes to Artisyn, as well as the nature and extent of Plaintiffs' claimed damages.

Mrs. Salinero has also suffered from severe migraine headaches for more than 20 years. These migraines last 4-5 days; cause her to vomit; incapacitate her; lead her to frequently ingest narcotics; and result in trips to the emergency rooms about every 6 months. The narcotics she consumed to treat this pre-existing condition are related to her current bowel problems that she attributes to Artisyn.

Mrs. Salinero has suffered for years from depression, chronic anxiety and insomnia. These pre-existing problems, and her history of severe migraines, are relevant to the nature and extent of type of damages Plaintiffs claim in this case.

Mrs. Salinero's chronic constipation contributed to her pelvic organ prolapse. When she was 56 years old, her prolapse condition had become so severe (Stage IV) that her uterus was extending outside her vagina – creating a bulge that was about the size of a grapefruit. In December of 2012, Mrs. Salinero underwent a cystoscopy and three simultaneous abdominal surgeries performed by Dr. Jaime Sepulveda: (1) a supracervical hysterectomy; (2) a bilateral salpingo-oophorectomy; and (3) an abdominal sacrocolpopexy. Artisyn was implanted as part of the sacrocolpopexy procedure.

Mrs. Salinero did not experience any problems that she attributes to Artisyn until 2016, when she experienced abdominal pain, pain in her groin, pain during intercourse, and she felt exhausted. However, these problems were not caused by a defect in the Artisyn.

During 2017, Mrs. Salinero was diagnosed with a fistula. While performing surgery to repair that in April 2017, her surgeons discovered mesh in her rectum and bladder. Dr. Sepulveda removed the Artisyn during that surgery. None of her problems were caused by a defect in the Artisyn.

Mrs. Salinero's lifelong bowel problems have continued. Nevertheless, Plaintiffs seek damages for the continuation of Mrs. Salinero's pre-existing bowel problems. They also seek damages for a claimed loss of sexual relations, which can be attributed to Mrs. Salinero's other health problems, including her vaginal atrophy. Further, the jury must evaluate the credibility of Plaintiffs' testimony concerning this claim in light of overwhelming evidence that Mrs. Salinero suffered with severe, debilitating migraines, for decades; ingested large amounts of narcotics for years to try to cope with her pre-existing migraines; suffered from a lifelong history of chronic constipation; and struggled for years with pre-existing depression, chronic anxiety and insomnia.

**(2)     The basis of federal jurisdiction**.

28 USC § 1332(a).

**(3)     The pleadings raising the issues.**

a. Amended Complaint [D.E. 20]; and

b. Answer to Amended Complaint [D.E. 27].

**(4)     A list of all undisposed of motions or other matters requiring action by the Court.**

- a. Magistrate's Order following 4/2/19 conference (supplement Interrogatory No. 2) [D.E. 75];

- b. Defendant Johnson & Johnson's Motion to Dismiss for Lack of Personal Jurisdiction and Incorporated Memorandum of Law [D.E. 83];

- c. Magistrate's Order following 4/26/19 conference (Margolis Subpoena [D.E. 84]);

- d. Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law [D.E. 92-93];

- e. Plaintiffs' Motion to Preclude Expert Testimony from Three of Defendants' Expert Witnesses for Failure to Comply with the Disclosure Requirements of Rule 26(a)(2)(B) [D.E. 98];

- f. Plaintiffs' Omnibus Motion in Limine [D.E. 101-102];

    g. Defendants' Rule 42(B) Motion to Bifurcate and Incorporated Memorandum of Law [D.E. 105];

    h. Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery [D.E. 122].

**(5) A concise statement of uncontested facts which will require no proof at trial, with reservations, if any.**

    a. Plaintiffs, Charlotte and Efren Salinero, married in 1985 and have remained married ever since.

    b. When Charlotte Salinero was 56 years old, she was diagnosed with stage IV pelvic organ prolapse to the extent that that her uterus extended outside her vaginal opening at times.

    c. On December 3, 2012, Plaintiff Charlotte Salinero underwent a cystoscopy and three simultaneous abdominal surgeries performed by Dr. Jaime Sepulveda: (1) a supracervical hysterectomy; (2) a bilateral salpingo-oophorectomy; and (3) an abdominal sacrocolpopexy. During the sacrocolpopexy, Plaintiff was implanted with an Artisyn Mesh (Lot #EG8CZZZ0/Item # 67326).

    d. In 2017, Dr. Marcos Szomstein diagnosed Plaintiff Charlotte Salinero with a rectovaginal vesical fistula.

    e. On April 24, 2017, Plaintiff Charlotte Salinero underwent mesh explant surgery, which was performed by a team of surgeons consisting of Drs. Jaime Sepulveda, John Mekras, and Marcos Szomstein.

    f. Artisyn® Y-Shaped Mesh (Artisyn) was designed and manufactured by Ethicon and is used for the treatment of pelvic organ prolapse.

    g. Pelvic organ prolapse is a potentially debilitating condition where one or more of a woman's pelvic organs (bladder, rectum, and uterus) prolapse into her vagina.

    h. Artisyn is a bridging material used with a procedure called abdominal sacrocolpopexy, which is a surgery for treatment for uterovaginal prolapse.

    i. Artisyn is implanted through the abdomen.

    j. Artisyn is not a transvaginal mesh product.

**(6) A statement in reasonable detail of issues of fact which remain to be litigated at trial. By way of example, reasonable details of issues of fact would include: (A) As to negligence or contributory negligence, the specific acts or omissions relied upon; (B) As to damages, the precise nature and extent of damages claimed; (C) As to unseaworthiness or**

**unsafe condition of a vessel or its equipment, the material facts and circumstances relied upon; (D) As to breach of contract, the specific acts or omissions relied upon.**

    a.  Whether Defendants negligently designed the Artisyn Mesh.

    b.  Whether Defendants failed to warn as to the following risks and/or complications of which Defendants knew or should have known that accompanied said product including, but not limited to:[2]

        i.  That the polypropylene mesh degrades.

        ii.  That the polypropylene used was rigid and aggressive to tissues.

        iii.  That there had been no pre-market implantation testing of Artisyn.

        iv.  That the Artisyn Mesh shrinks, retracts, and contracts in vivo.

        v.  That the Artisyn Mesh is susceptible to erosion or extrusion.

        vi.  That the Artisyn Mesh caused chronic inflammation.

        vii.  That the properties of the Artisyn Mesh products were such that scarring formation occurs.

        viii.  That the Artisyn's mesh pore size would not allow for proper tissue integration.

        ix.  That the elasticity percentage at strain of the Artisyn mesh had not been defined pre-market.

        x.  As to inadequate pre-market testing as to the mating of the properties of the Artisyn mesh to the natural properties of the female pelvis.

        xi.  As to deformation of the product and its pore size once the product was under stress.

        xii.  As to the absence of pre-market randomized control trials.

        xiii.  That Defendants had information regarding the rate of complications associated with the use of pelvic organ prolapse (POP) devices similar to the Artisyn product and never advised doctors of the same.

---

[2] Defendants contend that Plaintiffs may not offer evidence of any potential warning of product risks that were not included in Plaintiffs' Second Amended Responses to Defendants' Interrogatory No. 6, which was the subject of a court order compelling complete interrogatory responses on April 2, 2019 (DE 75). In particular items 6.j.ii., iii., viii, ix, x, xi, xiii, xv, and xvi were not disclosed as ordered by the Court.

      xiv.    As to the difficulty and removal of mesh once implanted.

      xv.    The permanency of the complications caused by the mesh.

      xvi.    That Defendants' polypropylene resin supplier had warned that polypropylene should not be used in medical applications involving permanent implantation in the human body or permanent contact with internal bodily fluids or tissues.

c. Whether any of the risks set forth above in section 6(b)(i-xvi) support Plaintiffs' strict liability claims.

d. Whether Artisyn was a defective product.

e. Whether Artisyn created an unreasonably dangerous condition.

f. Whether Mrs. Salinero was aware, or was adequately warned by Defendants and/or Dr. Sepulveda.[3]

g. Whether Dr. Sepulveda was independently aware, or was adequately warned by Defendants, of the potential risks of complications associated with Artisyn.

h. Whether Artisyn was a state of the art medical device.

i. Whether Artisyn is regulated by the U.S. Food & Drug Administration (FDA).[4]

j. Whether the FDA places medical devices in classes according to the risk they present and regulates them accordingly.

k. Whether Class II medical devices, defined in 21 U.S.C. §360c(a)(1)(C) as those that do not present a "potential unreasonable risk of illness or injury."

l. Whether Artisyn was cleared by the FDA using a 510(k) notice process - which requires a demonstration that a new device is as safe and effective as an existing Class II device.

m. Whether the FDA concluded that Artisyn is a Class II medical device because there is "reasonable assurance" of its safety and efficacy and it does not present a "potential unreasonable risk of illness or injury."

---

[3] Defendants oppose the litigation of this fact during trial on the grounds that it is not relevant to any claims or defenses in this case. As explained in ¶ 8.d below, the duty to warn for prescription medical devices, including Artisyn, extends to the physician, not the patient.

[4] Defendants contend that the information in Paragraphs 6(i) – (m) are not reasonably a contested. They are a matter of public record and are subject to judicial notice pursuant to Fed. R. Evid. 201.

n. Whether Plaintiffs have established the existence of a feasible alternative design.[5]

o. Whether Artisyn proximately caused any of Plaintiffs' claimed damages.

p. What are the nature and extent of damages, if any, sustained by the Plaintiffs that were proximately caused by a defective or unreasonably dangerous condition of Artisyn.

q. Whether there are any facts that establish liability of J&J in this case.

r. Whether Defendants engaged in any conduct sufficient to meet Plaintiffs' burden of showing that they are entitled to punitive damages.

s. Whether Defendants are strictly liable (failure to warn and design defect) to the Plaintiffs.

t. Whether any negligent action of the Defendants proximately caused injury to the Plaintiffs, and if so, what amounts to award Plaintiffs as damages.

u. Whether the actions of Defendants such as to entitle the Plaintiffs to an award of punitive damages; and whether the Plaintiffs are entitled to an award of punitive damages.

v. Whether Charlotte Salinero has a lifelong history of chronic constipation.

w. Whether Charlotte Salinero has suffered from severe migraine headaches for more than 20 years.

**(7)    A concise statement of issues of law on which there is agreement.**

a. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

b. Venue is proper in the judicial district pursuant to 28 U.S.C. §§ 1391(b)(2).

c. Florida law concerning product liability actions applies to the following causes of action asserted by Plaintiffs:

   i.   (Count I) Negligence.
   ii.  (Count III) Strict Liability – Failure to Warn.
   iii. (Count IV) Strict Liability – Design Defect.
   iv.  (Count V) False Information Negligently Supplied for the Guidance of Others.
   v.   (Count VII) Gross Negligence.
   vi.  (Count VIII) Loss of Consortium.

---

[5] As set forth in ¶ 8.f., below, Plaintiffs do not agree this evidence reflects the correct standard for design defect. Defendants disagree and contend it is also admissible and relevant to its other defenses, including negligence and reasonableness of conduct in rebutting punitive damages.

    d. Florida law concerning product liability actions applies to Defendants' defenses in this case.

**(8)     A concise statement of issues of law which remain for determination by the Court**.

    a. <u>Whether this Court has personal jurisdiction over Defendant, Johnson & Johnson</u>. Defendants contend that Johnson & Johnson is a holding company that is incorporated and operates in the State of New Jersey which does not manufacture, distribute, or market the Artisyn device at issue and, therefore, Johnson & Johnson is not subject to general or specific personal jurisdiction in this case. [D.E. 83].

    b. <u>Which state law governs punitive damages in this case.</u> Defendants contend that New Jersey law governs punitive damages, as the alleged conduct giving rise to any claim for punitive damages occurred primarily in New Jersey, where Defendants' principal place of business is located. [D.E. 92-93].

    c. <u>Bifurcation of punitive damages.</u>  Defendants contend that the jury should first evaluate liability and the amount of any compensatory damages, and only during a second phase should the jury determine any amount of punitive damages.  *See W.R. Grace & Co. v. Waters*, 638 So.2d 502 (Fla. 1994). [D.E. 105].

    d. <u>The appropriate legal standard on a failure to warn claim</u>. Defendants contend that under the "learned intermediary" doctrine, the duty to warn is discharged by informing the physician, rather than the patient, of the potential risks of the product. [D.E. 100].

    e. <u>Whether evidence regarding compliance with FDA requirements creates a legal presumption</u>. Plaintiffs contend that any evidence regarding Defendants' compliance with the FDA's processes should be barred at trial as such evidence could lead to more confusion than enlightenment and would result in a mini-trial on FDA and regulatory matters. [D.E. 90-91] Defendants contend that any evidence regarding the product's compliance with FDA requirements is admissible and relevant, and creates a rebuttable presumption that the product is not defective or unreasonably dangerous.

    f. <u>The appropriate legal standard for defective design claims involving complex products</u>. Pursuant to *Aubin v. Union Carbide Corp.*, 177 So. 3d 489 (Fla. 2015), Plaintiffs contend that the consumer expectations test governs defective design claims in Florida, irrespective of whether the product at issue is deemed a 'complex product' or not.  Plaintiffs further contend that Artisyn is not a 'complex product' as suggested by Defendants. Defendants contend that a product is unreasonably dangerous because of its design if the risk of danger in the design outweighs the benefits (commonly known as the "risk/benefit test"). In cases involving complex products such as Artisyn, that are available only through a physician, the consumer expectation test should not apply.  *See, e.g., Force v. Ford Motor Co.*, 879 So. 2d 103, 110 (Fla. Ct. App. 2004) ("conclud[ing] that there may indeed be products that are too complex for a logical

application of the consumer-expectation standard," but "leav[ing] the definition of those products to be sorted out by trial courts"); *Tran v. Toyota Motor Corp.*, 420 F.3d 1310, 1314 (11th Cir. 2005); *Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1339 (M.D. Fla. 2015) ("Because this case pertains to a complex medical device, accessible to the consumer only through a physician, the Court finds that the consumer-expectation test is not applicable here."); *Rydzewski v. DePuy Orthopaedics, Inc.*, No. 11-80007-Civ., 2012 WL 7997961, at *3 (S.D. Fla. Aug. 14, 2012) (rejecting the consumer-expectation test in a design defect claim pertaining to a medical device); *In re Fosamax Prods. Liab. Litig.*, No. 1:06-MD-1789-JFK, 2010 U.S. Dist. LEXIS 33260, 2010 WL 1257299, at *6 n.4 (S.D.N.Y. Mar. 26, 2010) (applying Florida law and rejecting consumer-expectation test in a design defect claim pertaining to a prescription drug). Although the Florida Supreme Court rejected the risk/benefit test in favor of the consumer expectation test in *Aubin v. Union Carbide Corp.*, 177 So. 3d 489 (Fla. 2015), that case did not involve a complex product, such as a medical device, and the Court did not address prior case law suggesting that the consumer expectation test does not apply where the product's design is beyond the ability of a reasonable consumer to comprehend.

**(9)     Before execution of the pretrial statement, exhibits must be pre-marked and exchanged (exhibit stickers must contain case number, exhibit number, and party offering the exhibit). This allows for preparation of each party's numbered list of trial exhibits, other than impeachment exhibits, with objections, if any, to each exhibit, that includes the basis of all objections to each document, electronically stored information and thing. The list of exhibits shall be on separate schedules attached to the stipulation, should identify those which the party expects to offer and those which the party may offer if the need arises, and should identify concisely the basis for objection. In noting the basis for objections, the following codes should be used:**

> **A–Authenticity**
> **I–Contains inadmissible matter (mentions insurance, prior conviction, etc.)**
> **R–Relevancy**
> **H–Hearsay**
> **UP–Unduly prejudicial-probative value outweighed by undue prejudice**
> **P–Privileged**
> **Counsel may agree on any other abbreviations for objections, and shall identify such codes in the exhibit listing them.**

Plaintiffs' Exhibit List is attached hereto as **Exhibit "1"**.

Defendants' Exhibit List is attached hereto as **Exhibit "2"**.

**(10)     Each party's numbered list of trial witnesses, with their addresses, separately identifying those whom the party expects to present and those whom the party may call if the need arises. Witnesses whose testimony is expected to be presented by means of a deposition shall be so designated. Impeachment witnesses need not be listed. Expert witnesses shall be so designated.**

a. **Plaintiffs**

A.   Names of witnesses Plaintiffs expect to present at trial:

The final list of witnesses Plaintiffs ultimately present at trial could be dependent on the overall trial schedule and availability of Plaintiffs' witnesses. As such, some of these witnesses could ultimately be called by video, not live in court. Subject to those considerations, and without waiving its right to call additional witnesses who are not identified on the list below, Plaintiffs expect to present the following witnesses at trial:

| Name/Address | Will/May Call | Live/Deposition | Fact/Expert |
|---|---|---|---|
| Plaintiff Charlotte Salinero<br>8200 SW 89th Street<br>Miami, FL 33156 | Will | Live | Fact |
| Plaintiff Efren Salinero<br>8200 SW 89th Street<br>Miami, FL 33156 | Will | Live | Fact |
| Mark Salinero<br>3301 NE 5th Avenue<br>Apt. 515<br>Miami, FL 33137 | May | Live | Fact |
| Dr. Kathryn Salinero<br>5416 Fair Avenue<br>Apt. 1-406<br>North Hollywood, CA 91601 | May | Live | Fact |
| Dr. Jamie Sepulveda<br>6200 Sunset Drive, Suite 504<br>South Miami, FL 33176 | May | Live or Deposition | Fact |
| Dr. John Mekras<br>7051 SW 62nd Ave.<br>South Miami, FL 33143 | May | Live or Deposition | Fact |
| Dr. Marcos Szomestein<br>7765 SW 87th Ave., Suite 212<br>Miami, FL 33173 | May | Live | Fact |
| Dr. Vladimir Iakovlev | Will | Live | Expert |

| | | | |
|---|---|---|---|
| 30 Bond St.<br>Cardinal Carter<br>Room 2-015<br>Toronto, Ontario,<br>Canada M5B1W8 | | | |
| Dr. Michael Margolis<br>1820 Ogden Dr.<br>Burlingame, California 94010 | Will | Live | Expert |
| Dr. Russell Dunn<br>9100 Keats Street<br>Franklin, TN | May | Live | Expert |
| Dr. Scott Guelcher<br>2301 Vanderbilt Place<br>Nashville, TN 37235 | May | Live | Expert |
| Any witness necessary to authenticate records whose authenticity is not stipulated to. | May | Live or Deposition | Fact |
| Any witness listed by Defendants | May | Live or Deposition | Fact |

B.  <u>Names of witnesses Plaintiffs may call if need arises at trial</u>:

Plaintiffs also reserve the right to utilize any depositions taken in this case or *In Re Ethicon, Inc., Pelvic Repair System Products Liability Litigation*, MDL No. 2327 to respond to any objections raised by Defendants to the admissibility and/or introduction of any exhibits and/or documents listed in **Exhibit "1"** or any exhibits and/or documents listed on Defendants' exhibit list.[6]

**b.   Defendants**

Inclusion of witnesses on Defendants' Witness List is not an admission that the testimony of that witness is admissible, and Defendants preserve their objections to the testimony of witnesses.

---

[6] Defendants contend that any such deposition designations or exhibits that were timely disclosed pursuant to the scheduling order are untimely and cannot be preserved by this reference.

| Name/Address | Will/May Call | Live/Deposition | Fact/Expert |
|---|---|---|---|
| Dr. Jaime Sepulveda<br>6200 Sunset Drive, Suite 504<br>South Miami, FL 33176 | Will | Deposition | Non-retained expert |
| Dr. Amir Shariati<br>5300 West Hillsboro Blvd, Suite 207<br>Coconut Creek, FL 33073 | Will | Live | Expert |
| Dr. Steven MacLean<br>17000 Science Drive, Suite 200<br>Bowie, MD 20715 | Will | Live | Expert |
| Dr. Teri Longacre<br>900 Blake Wilbur Dr.<br>2nd Floor<br>Palo Alto, CA 94304 | May | Live | Expert |
| Dr. Catherine A. Matthews<br>Dept. of Urology<br>Wake Forest School of Medicine<br>Medical Center Blvd.<br>Winston Salem, NC 27157 | May | Live | Expert |
| Mr. Timothy A. Ulatowski<br>1103 Arboroak Place<br>Herndon, VA 20170 | May | Live | Expert |
| Richard W. Hutchinson<br>1400 McKean Rd<br>Spring House, PA 19477 | May | Live | Non-retained expert |
| Rey Librojo<br>c/o Calfo Eakes & Ostrovsky PLLC<br>1301 Second Avenue, Suite 2800<br>Seattle, WA 98101 | May | Live | Non-retained expert |
| Dr. Piet Hinoul<br>4545 Creek Road<br>Cincinnati, OH 45242 | May | Live | Non-retained expert |
| Charlotte Salinero<br>8200 Southwest 89th St. | May | Live | Fact |

- 16 -

| | | | |
|---|---|---|---|
| Miami, Florida 33156 | | | |
| Dr. Efren Salinero<br>8200 Southwest 89th St.<br>Miami, Florida 33156 | May | Live | Fact |
| Any witness necessary to authenticate records whose authenticity is not stipulated to. | May | Live | Fact |
| Any witness listed by Plaintiffs | May | Live | Fact |

**(11)  Estimated trial time.**

Plaintiffs estimate that trial will last 8-9 days.

Defendants estimate that trial will last 12-13 days.

**(12)  Where attorney's fees may be awarded to the prevailing party, an estimate of each party as to the maximum amount properly allowable.**

Not applicable.

Dated:  May 17, 2019

*/s/ James L. Ferraro*
James L. Ferraro, Jr.
Florida Bar No. 107494
E-Mail: jjr@ferrarolaw.com
**THE FERRARO LAW FIRM**
600 Brickell Avenue, Suite 3800
Miami, FL 33131
Telephone:  305-375-0111
Facsimile:   305-379-6222

*Counsel for Plaintiffs Charlotte and Efren Salinero*

*/s/ Amanda E. Preston*
Andrew R. Kruppa
Florida Bar No. 63958
Email:  andrew.kruppa@squirepb.com
Amanda E. Preston
Florida Bar No. 123652
E-Mail: amanda.preston@squirepb.com
**SQUIRE PATTON BOGGS (US) LLP**
200 S. Biscayne Blvd., Ste. 4700
Miami, FL  33131
Telephone:  305-577-7000
Facsimile:   305-577-7001


*/s/ Paul V. Cassisa, Jr.*
Paul V. Cassisa, Jr.
Email: Paul.Cassisa@butlersnow.com
**BUTLER SNOW LLP**
1200 Jefferson Ave.
Suite 205
Oxford, MS 38655
Telephone: (662) 513-8004
Fax: (662) 513-8001

*Counsel for Defendants Johnson & Johnson and Ethicon, Inc.*


# CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.


*/s/ Amanda E. Preston*
Amanda E. Preston